UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-10943-RWZ

OAHN NGUYEN CHUNG, *et al.*

v.

STUDENTCITY.COM, INC.

MEMORANDUM OF DECISION

February 12, 2013

ZOBEL, D.J.

Defendant StudentCity.com ("StudentCity") previously moved to dismiss plaintiffs' claims and compel arbitration. On September 9, 2011, I denied that motion in part. StudentCity now moves for reconsideration.

**I.   Background**

The facts of this case are discussed in my previous order. Briefly, Lisa Tam Chung ("Lisa") and Loren Daily ("Loren")[1] traveled to Cancun, Mexico, on a student tour organized by StudentCity. A boating accident occurred. Lisa drowned, and Loren barely escaped. Lisa's parents Oahn Nguyen Chung ("Oahn") and Liem Chung ("Liem"), along with Loren and her parents Ollie Daily ("Ollie") and Patricia Daily ("Patricia"), now sue StudentCity; they allege negligence, gross negligence, and deceptive business

---

[1] The parties spell Loren's last name as either "Daily" or "Dailey." I use "Daily" throughout for consistency.

practices. In addition, Oahn sues as Lisa's administratrix for Lisa's conscious pain and suffering.

StudentCity moved to dismiss all claims and compel arbitration, based on an arbitration clause in its customer agreement. I allowed StudentCity's motion as to the claims by Oahn as Lisa's administratrix. However, I denied the motion as to Oahn's and Liem's wrongful death claims, finding that under Massachusetts law the wrongful death claims were not bound by Lisa's agreement to arbitrate. I also denied the motion without prejudice as to the Daily family's claims, because the record was unclear on whether Patricia Daily had assented to the StudentCity customer agreement.[2] Finally, I denied StudentCity's request to stay all nonarbitrable claims.

The parties proceeded with limited discovery on whether Loren's parents had assented to the StudentCity customer agreement. With that discovery complete, StudentCity now moves for reconsideration of my previous order.

## II. Analysis

StudentCity's motion seeks relief on three points. First, StudentCity asks for reconsideration of the decision that Oahn's and Liem's wrongful death claims are not derivative of Lisa's claims. StudentCity alternatively asks me to certify this question to the Supreme Judicial Court of Massachusetts ("SJC"). Second, StudentCity argues from the evidence produced in discovery that the Daily family was bound by the StudentCity customer agreement and so their claims are subject to arbitration. Finally, StudentCity again requests that any nonarbitrable claims be stayed.

---

[2] Loren was a minor at the time, meaning she could not bind herself to the agreement.

2

### A. Oahn's and Liem's Wrongful Death Claims

Reconsideration is an extraordinary remedy that should rarely be granted. Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006). To obtain relief on a motion for reconsideration, "the movant must demonstrate either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law." Id.

StudentCity's motion for reconsideration does not present any new evidence as to Oahn's and Liem's wrongful death claims, nor does it show any manifest error of law. As noted in my previous order, the Massachusetts courts have not yet squarely decided whether a Massachusetts wrongful death claim is covered by a decedent's arbitration agreement. Other jurisdictions are divided on the question. Compare, e.g., In re Labatt Food Serv., 279 S.W.3d 640, 645-46 (Tex. 2009) (finding wrongful death claims under Texas law governed by decedent's arbitration agreement), with Peters v. Columbus Steel Castings Co., 873 N.E.2d 1258, 1260-62 (Ohio 2007) (finding wrongful death claims under Ohio law not governed by decedent's arbitration agreement). My previous order addressed this question squarely, considering both relevant Massachusetts authority and persuasive cases from other jurisdictions. Because StudentCity gives no persuasive reason to reconsider that analysis, the motion is denied as to Oahn's and Liem's wrongful death claims.

In the alternative, StudentCity urges me to certify this question to the SJC. When a federal court is presented with a novel, dispositive question of Massachusetts law, "our choices are two: we can make our best guess on th[e] . . . issue, or we can certify

3

the question and ancillary issues to the SJC." Boston Gas Co. v. Century Indem. Co., 529 F.3d 8, 13 (1st Cir. 2008). "The first path offers the benefit of expedition but with a risk of error; the second path, the reverse." Id. In this case, which has already been pending for nearly three years, I find expedition the better course. The request for certification is therefore denied.

### B. The Daily Family's Claims

Under Massachusetts law, "the contract of a minor is generally voidable when she reaches the age of majority." Sharon v. City of Newton, 769 N.E.2d 738, 746 (Mass. 2002).[3] Loren was a minor at the time she signed StudentCity's customer agreement; after she reached majority, she unequivocally repudiated the arbitration clause by filing suit. See id. Loren therefore is not bound by her own agreement to arbitrate her claims. But if Loren's parents agreed to arbitration of her claims, Loren may be bound by her parents' assent. See Sharon, 769 N.E.2d at 745-47.

My previous order denied without prejudice StudentCity's motion to dismiss the Daily family's claims and compel arbitration, because the record left unclear whether either of Loren's parents had assented to the StudentCity customer agreement. Limited discovery on that issue has now revealed the following facts.

#### 1. Facts

Before booking her trip, Loren received a registration form that incorporated by reference the complete terms and conditions of the StudentCity customer agreement. This form included a space for Loren's signature and a space for a parental signature.

---

[3] This case does not fall within one of the statutory exceptions to that general rule. See Sharon, 769 N.E.2d at 746 n.9.

Loren's mother Patricia saw the blank registration form before Loren filled it out, but she did not read it.

Loren filled out the form several weeks later, and forged her mother's signature in the parental signature space. She left the completed form on a counter at home, where her father Ollie saw it. Ollie noticed Patricia's signature, but did not realize it was a forgery. He also did not read the form carefully. Loren then mailed the form to StudentCity.

Loren made most of the payments toward her trip through the StudentCity website, using her own debit card. She also made two online payments using her mother's debit card and one using her father's debit card. Her parents authorized her to use their cards to make those payments. However, they were not physically present at the computer when Loren used their cards.

The StudentCity website requires its users to check a box agreeing to the full terms and conditions of the StudentCity customer agreement before making any online payments. That is, each time Loren made an online payment—whether using her own card, her mother's card, or her father's card—she checked a box agreeing to the StudentCity customer agreement.[4]

### 2. Analysis

Based on those facts, StudentCity advances four theories to argue that Loren

---

[4] Loren does not recall checking that box on any occasion. However, StudentCity has submitted testimony by affidavit that "an online payment cannot be made . . . without the trip participant affirmatively agreeing to StudentCity's complete terms and conditions." Docket # 34, Ex. B, ¶ 12. The Daily plaintiffs do not otherwise dispute that testimony, and Loren's failure to remember checking the box does not create a genuine issue of fact.

5

and her parents are bound by the customer agreement. First, they argue that Patricia and Ollie gave Loren authority to use their debit cards to pay StudentCity, and so also gave Loren authority to assent to the StudentCity customer agreement on their behalf. Second, they argue that Loren had apparent authority to forge her mother's signature on the registration form. Third, they argue that Ollie ratified the forged signature when he saw the completed form and allowed Loren to mail it. Fourth, they argue that Loren and her parents should be equitably estopped from disavowing the signature that Loren forged.

The second and third theories can be quickly discarded. Apparent authority exists only where conduct by a principal causes a third party to reasonably believe that a person has authority to act as her agent. Linkage Corp. v. Trustees of Boston Univ., 679 N.E.2d 191, 203 (Mass. 1997); Restatement (Third) of Agency §§ 2.03, 3.03 (West 2012). Here, there is no conduct by Patricia or Ollie toward StudentCity from which StudentCity could reasonably believe Loren had authority to sign Patricia's name.

As for ratification, "[a] person may ratify an act if the actor acted or purported to act as an agent on the person's behalf." Restatement (Third) of Agency § 4.03 (West 2012). Loren purported to act on Patricia's behalf in forging Patricia's signature. As such, only Patricia (not Ollie) could ratify that signature.[5] In any case, Ollie did not know the signature was forged—meaning he could not ratify it, because he

---

[5] StudentCity argues that because the registration form only asked for a "parental signature," and Ollie and Patricia were both parents, Ollie could ratify Patricia's signature. StudentCity cites no law in support of that argument, and it finds no support in any case I have seen. See, e.g., Coral Gables v. Granara, 189 N.E. 604, 607 (Mass. 1934) (stating that "the person whose name is borne" on a promissory note may ratify the action if he "adopts the signature as his own"); Boice-Perrine Co. v. Kelley, 137 N.E. 731, 733 (Mass. 1923) (principal must ratify or disaffirm an act "done in his name").

did not have "full knowledge of all material facts." Colony of Wellfleet, Inc. v. Harris, 883 N.E.2d 1235, 1241 (Mass. App. Ct. 2008) (quoting Perkins v. Rich, 415 N.E.2d 895, 898 (Mass. App. Ct. 1981)).

The fourth theory can also be quickly discarded as to Patricia and Ollie. Equitable estoppel depends on a representation intended to induce reliance, see Bongaards v. Millen, 793 N.E.2d 335, 339 (Mass. 2003), and neither Patricia nor Ollie made any such representation.[6]

But StudentCity's first theory—its agency theory—has merit. "An agency relationship is created when there is mutual consent, express or implied, that the agent is to act on behalf and for the benefit of the principal, and subject to the principal's control." Theos & Sons, Inc. v. Mack Trucks, Inc., 729 N.E.2d 1113, 1119 (Mass. 2000). Here, Patricia and Ollie authorized Loren to make online payments using their debit cards. She thus acted as their agent in making those payments.[7] Under basic agency principles, Loren could bind Patricia and Ollie on matters within the scope of her authority. For instance, Patricia and Ollie were legally obligated to pay the charges they authorized Loren to put on their cards.

---

[6] As for Loren, it is not clear how the doctrine of estoppel applies to minors in Massachusetts. On the one hand, "[t]he general rule is that contracts of minors are voidable . . . to afford protection to minors from their own improvidence and want of sound judgment." Frye v. Yasi, 101 N.E.2d 128, 130 (Mass. 1951). In particular, a minor is not estopped by misrepresenting his age. Raymond v. Gen. Motorcycle Co., 119 N.E. 359, 359 (Mass. 1918). On the other hand, other jurisdictions have found estoppel applicable where the minor's conduct is "intentional and fraudulent," 43 C.J.S. Infants § 148 (West 2012), as it was here. The parties have not cited any Massachusetts precedent squarely on point, and I have found none.

[7] The Daily plaintiffs argue that Loren was not acting as an agent because the payments she made were not "for the benefit of" Patricia or Ollie. That misunderstands the agency relationship. The question is whether the principal sought the immediate result, not whether the principal ultimately benefits from the proposed transaction. For instance, if a parent tells a child to go buy milk at the store, the child buys milk as the parent's agent even if the parent only wants the milk for the child. So too here.

The more difficult question is whether Loren acted within the scope of her authority in agreeing to StudentCity's online customer agreement for Patricia and Ollie. In general, an agent has authority for "acts necessary or incidental to achieving the principal's objectives." Restatement (Third) of Agency § 2.02(1); see Transurface Carriers, Inc. v. Ford Motor Co., 738 F.2d 42, 45 (1st Cir. 1984) ("The law of principal and agent is clear that conferring authority to conduct a transaction gives authority to undertake acts incidental to the transaction."). The question is therefore whether assenting to the customer agreement was incidental to making the payments Patricia and Ollie authorized.

I conclude that it was. First, it was actually necessary to assent to the customer agreement in order to make a payment on the StudentCity website. Second, agreeing to the seller's terms and conditions are a normal part of making any purchase, especially an online purchase. Cf. Transurface Carriers, 738 F.2d at 46 (finding that signing papers "usual and necessary" to picking up a purchase are within the apparent authority of an agent). Third, both Patricia and Ollie had actual notice that StudentCity attached certain terms and conditions to the trip, because they had both seen the registration form before authorizing Loren to use their debit cards. Finally, Patricia and Ollie do not claim—and could not plausibly claim—that they would have refused to let Loren use their debit cards if they had known it meant assenting to StudentCity's standard customer agreement. Given these facts, I hold that assenting to the StudentCity customer agreement was within the scope of Loren's authority. Cf. id. at 45-47 (agent authorized to pick up truck was authorized to receive incidental

8

documents and agree to related warranties); Hofer v. The Gap, Inc., 516 F. Supp. 2d 161, 175 (D. Mass. 2007) (agent authorized to book travel online was authorized to agree to website's liability disclaimer).

As an agent for Patricia and Ollie, acting within the scope of her authority, Loren could assent on their behalf to the StudentCity customer agreement.[8] And because Loren's parents assented (through her and on her behalf) to the StudentCity customer agreement, Loren is bound by that agreement. See Sharon, 769 N.E.2d at 745-47. The Daily claims are therefore subject to arbitration, and so the motion to dismiss their claims and compel arbitration is allowed.[9]

**C. Nonarbitrable Claims**

Finally, StudentCity seeks reconsideration of my order denying a stay of the remaining nonarbitrable claims. The only remaining nonarbitrable claims are the wrongful death claims by Oahn and Liem. Whether to stay their claims is a matter of discretion. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21 n.23 (1983). As noted before, this case has now been pending for nearly three years. I see no reason to further stay adjudication of Oahn's and Liem's claims, particularly since their wrongful death claims are not derivative of Lisa's claims and so involve several questions not implicated by the proposed arbitration. StudentCity presents no new evidence on this question, nor does it point out any manifest error of law in the previous

---

[8] The fact that Loren was a minor did not prevent her from acting as an agent. See Restatement (Third) of Agency § 3.05, illus. 1.

[9] The complaint does not clearly explain the basis of Patricia's and Ollie's claims. It appears that their claims are derivative of Loren's, and so subject to arbitration because Loren's are. They have not argued otherwise.

decision. This aspect of the motion to reconsider is therefore denied.

## III.   Conclusion

StudentCity's motion (Docket # 28) is ALLOWED IN PART and DENIED IN PART. The claims of the Daily plaintiffs are DISMISSED in favor of arbitration. The wrongful death claims by Oahn and Liem shall proceed.

The remaining miscellaneous motions (Docket ## 37, 39, and 41) are DENIED AS MOOT.

|  |  |
|---|---|
| February 12, 2013 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |