UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-10943-RWZ

OAHN NGUYEN CHUNG, et al.

v.

STUDENTCITY.COM, INC.

ORDER

May 17, 2016

ZOBEL, D.J.

This case arose out of a boating accident that occurred during a high school graduation celebration trip to Cancun, Mexico organized by defendant StudentCity.Com, Inc. ("StudentCity"). Lisa Tam Chung and Loren Daily, two recent graduates on the trip, were on a snorkeling excursion organized by defendant when the boat collided with a reef and ultimately sank. Loren nearly drowned, but survived; Lisa was killed. Lisa's parents, her mother as administratrix of Lisa's estate, and Loren's parents brought several claims against StudentCity. Early in the litigation, I dismissed most of the claims because they were subject to a mandatory arbitration clause in the customer agreement that Lisa and Loren signed. See Docket ## 26, 42. StudentCity then filed a motion to dismiss or in the alternative for summary judgment on the remaining claims – Lisa's parents' wrongful death claims. Docket # 47. I denied the motion to dismiss and reserved on the alternative motion for summary judgment, stating

that I would rule on that after discovery. Docket # 56. Discovery is now complete, the parties have supplemented their briefing, and the motion for summary judgment is ripe for decision. For the reasons explained herein, it is ALLOWED.

**I.     Background**

As is appropriate at summary judgment, I describe the facts in the light most favorable to the non-moving party, the plaintiffs. Cracciolo v. E. Fisheries, Inc., 740 F.3d 64, 65 (1st Cir. 2014).

StudentCity is a tour operator that specializes in selling and providing beach destination trips to graduating high school students. Part of StudentCity's marketing involves providing information to the students' parents that is designed to make them feel comfortable sending their children on a trip. StudentCity advertises that it has the highest staff to student ration in the industry and emphasizes that it provides trained staff at all scheduled events during the trip. Staff is present to ensure that events are run as safely as possible and that travelers receive high-quality service.

In 2008, StudentCity contracted with Servicios Maritimos y Acuaticos del Caribe SA de C.V. ("Servicios Maritimos") to provide snorkeling excursions for its guests in Cancun, Mexico. StudentCity chose Servicios Maritimos at the recommendation of Dario Flota of Viajes del Tropico, a travel organization in Cancun with which it had worked for several years. At some point before June 2008, a StudentCity employee visited Servicios Maritimos where she saw their snorkeling vessel, the *Sea Star*. When StudentCity contracted with Servicios Maritimos, neither it nor Mr. Flota was aware of any safety or regulatory concern regarding the company or its snorkeling vessel.

In 2008, Lisa Chung and Loren Daily purchased a trip to Cancun, Mexico from StudentCity. For an extra fee, they also purchased an activity package that included a snorkeling excursion. On June 7, 2008, Lisa and Loren, along with a group of about 120 StudentCity tour participants, embarked on the snorkeling trip on Servicios Maritimos' *Sea Star*. A StudentCity employee was on the boat, although she was not officially on-duty that day. During the sailing, the *Sea Star* struck a reef and partially sank. Lisa and Loren put on life preservers and jumped into the water. At some point, the two young women became trapped beneath the hull of either the *Sea Star* or another vessel that came to assist. Loren was pulled from the water without serious injury. Lisa was also eventually pulled from the water, but later determined to be brain dead. She was formally pronounced dead at a hospital in Texas a few days later. An investigation by Mexican authorities later found that the accident was caused by an overloading of passengers on the *Sea Star* and its negligent operation by the crew.

The present lawsuit ensued. As noted above, the only remaining claims are the wrongful death claims of Lisa's parents as to which StudentCity now seeks summary judgment.

**II.   Legal Standard**

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue is 'genuine' for purposes of summary judgment if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a

3

'material fact' is one which might affect the outcome of the suit under the governing law." Poulis-Minott v. Smith, 388 F.3d 354, 363 (1st Cir. 2004) (citations and internal quotations omitted).  In considering whether or not a genuine issue of material fact exists, the court "must view the evidence in the light most favorable to the opposing party." Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014).

## III. Analysis

Lisa's parents' remaining claims against StudentCity are for the wrongful death of their daughter.  The parties agree that Massachusetts law governs.  The Massachusetts wrongful death statute imposes liability against a person who "by his negligence causes the death of a person." Mass. Gen. Laws ch. 229, § 2.  "To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." Cracciolo, 740 F.3d at 69 (citing Jupin v. Kask, 849 N.E.2d 829, 834-835 (Mass. 2006)).  Plaintiffs have advanced two negligence theories in this case: that StudentCity (1) negligently selected Servicios Maritimos as its snorkeling excursion vendor; and (2) breached the duty it voluntarily assumed to ensure the safety of tour participants.

### A. Negligent Selection

Plaintiffs' first theory of liability is that StudentCity breached its duty to investigate the competence of its excursion operators when it selected Servicios Maritimos.  In particular, plaintiffs contend that StudentCity did not "conduct an inquiry into the competency of the crew and the captain to conduct the excursion."  See Docket

4

# 68, at 19-20.  It is correct that a tour operator has a duty to exercise reasonable care to avoid selecting dangerous vendors/third party services providers.  See Weinberg v. Grand Circle Travel, LLC, 891 F. Supp. 2d 228, 249 (D. Mass. 2012).  However, "a valid cause of action for negligent selection would require a rather unreasonable set of facts to prevail."  Id.  Viewing the evidence in the light most favorable to plaintiffs, such facts are lacking here.

StudentCity selected Servicios Maritimos on the recommendation of Dario Flota who was, at the time, the Sub-Secretary of Touristic Promotion of the State of Quintana Roo and the owner of StudentCity's groundhandler, Viajes del Tropico.  See Docket 70-1 ¶ 3.  When he made his recommendation, Mr. Flota had worked with Servicios Maritimos for at least two seasons and was unaware of any safety or regulatory concerns regarding it or its *Sea Star* vessel.  See id. ¶¶ 6-8.  Mr. Flota understood from Servicios Maritimos that the *Sea Star* had a passenger capacity of 250, and he relayed that information to StudentCity.  See id. ¶ 9.  A StudentCity employee also visited Servicios Maritimos and viewed the *Sea Star* before StudentCity made its vendor selection.  Before the June 7, 2008 accident, StudentCity did not know and had no reason to know that Servicios Maritimos' operations may be unsafe.

There is simply no evidence to suggest that the steps StudentCity took in selecting its snorkeling excursion vendor were unreasonable under the circumstances. A tour operator is not responsible for ferreting out potential hidden hazards with third party service providers where, as here, there is no reason to suspect danger.  See Wilson v. American Trans Air, Inc., 874 F.2d 386, 390 (7th Cir. 1989).  And imposing

an obligation on StudentCity to have evaluated the *Sea Star* crew's competence is illogical because it would be tantamount to requiring StudentCity to have become experts in seamanship. This the law does not require. Therefore, summary judgment is appropriate as to plaintiffs' claims to the extent based on a negligent selection theory.

### B. Assumed Duty

Plaintiffs also contend that StudentCity is liable because it breached its duty to ensure Lisa's safety during the snorkeling excursion. In plaintiffs' view, StudentCity assumed this duty by advertising to parents that tour participant safety is a priority and that staff are on site for all StudentCity-organized events. Here, plaintiffs conflate two duties which, in the court's view, are distinct: (1) a duty for general supervision of tour participants; and (2) a duty to ensure that no injury can befall a tour participant as a result of a third party's negligence. The plaintiffs' claims can only survive summary judgment if plaintiffs can show that one or both of these duties applied to StudentCity, and that Lisa's death was caused by a breach of an applicable duty.

As to the first duty, the record is clear that a central part of StudentCity's marketing strategy was to reassure parents that their children would be supervised "to ensure the most reliable level of security possible throughout [the] trip." See, e.g., Docket ## 68-3, 68-4. Therefore, StudentCity voluntarily assumed a duty to generally supervise tour participants during all StudentCity-organized/scheduled events, including the June 7, 2008 snorkeling excursion. See Docket # 68-1, at 94; Docket 68-3. There is a dispute over whether StudentCity breached this duty by failing to have an

on-duty staff member on board the *Sea Star* during the snorkeling excursion – only an off-duty staff member was on board.  However, this dispute is ultimately of no moment because even assuming a breach, the claim fails on causation.  Lisa's death resulted not from inadequate supervision by StudentCity staff, but rather from the boat accident caused by the overloading of the *Sea Star* and its negligent operation by Servicios Maritimos.

Nor can plaintiffs ground their claim in the second of the duties.  As noted above, StudentCity voluntarily assumed a duty to generally supervise tour participants.  However, there is no evidence that StudentCity assumed a duty to ensure that no harm would occur to tour participants as a result of the negligence of a third party.  Indeed, StudentCity's explicit rejection of such a duty is confirmed by its Customer Agreement:

> I understand that StudentCity.com (also d/b/a GradCity.com and Sun Coast Vacations) does not own or operate any entity which provides goods or services for my Trip including, for example, air carriers, hotels, ground operators, boat or bus companies, restaurants, clubs, sightseeing establishments, etc.
> ...
> I understand and agree that all travel arrangements included in this trip are made on my behalf upon the express condition that neither [StudentCity] nor its owners, employee, officers or agents shall be liable or responsible for any negligent or willful act or failure to act of any third party, such as operators of aircraft, trains, motorcoaches, private cars, cruise vessels, boats, ships ... which are to or do supply any goods or services for my trip.  I further understand that [StudentCity] neither owns nor operates such third party suppliers ...

Docket # 49-1, at 12-14.  Nor would it make any sense to impose such a duty on StudentCity which is not an expert in boat operation.  Because StudentCity never assumed a duty to ensure absolute safety of tour participants during third-party

operated excursions, the plaintiffs' claims based on such a duty fail.

## IV.     Conclusion

The motion for summary judgment (Docket # 47) is ALLOWED.  Judgment may be entered for defendant.

|  |  |
|---|---|
|    May 17, 2016    |    /s/Rya W. Zobel    |
| DATE | RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |